COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Ortiz and Lorish
Argued by videoconference

UNPUBLISHED

JENNIFER ELIZABETH JONES

MEMORANDUM OPINION* BY
v.        Record No. 0541-24-4          JUDGE DANIEL E. ORTIZ
NOVEMBER 26, 2024

WINCHESTER DEPARTMENT OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF WINCHESTER
Alexander R. Iden, Judge

Sarah C. Orris (Orris Law Firm, PLLC, on brief), for appellant.

Kelly C. Ashby (Matthew L. Kreitzer, Guardian ad litem for the
minor children; Ashby & Andrews, P.C.; Northern Valley Law,
PLC, on brief), for appellee.

Jennifer Elizabeth Jones (mother) appeals the circuit court's orders adjudicating her

minor children abused and neglected, terminating her parental rights under Code § 16.1-283(B)

and (C)(2), and approving the foster care goal of adoption. Mother challenges the emergency

removal of the children and contends that the circuit court erred in finding sufficient evidence

that the children were abused and neglected. Mother also argues that the evidence was not

sufficient to terminate her parental rights and that adoption was not in the best interest of the

children. We affirm.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

Mother is the biological parent to two children, H.J. and R.J.[2]  The family first came to the Winchester Department of Social Services' (the Department) attention in 2020, when H.J. was born at 25-weeks gestation, and tested positive for fentanyl and marijuana exposure.  H.J., who was born underweight and had a lung condition, spent 119 days in the NICU following birth.  R.J., then five years old, also tested positive for marijuana.

The Department opened a family assessment and created a safety plan that included preliminary child protective orders, which prohibited mother from having unsupervised contact with the children.  In February 2021, while alone at the home with the children, mother gave H.J. methadone instead of Tylenol for teething.  Mother called 911, and H.J. was taken to the hospital and placed on a Narcan drip.  The responding officers noted that mother appeared to be under the influence of an unknown substance, and they located a methadone bottle and multiple cut straws, along with a crushed white substance, in the residence.  The Department removed the children in February 2021.

Following the children's removal, the Department referred mother for a mental health evaluation and substance abuse assessment, and instructed her to follow all recommended treatment.  The Department also required mother to undergo regular drug and alcohol screenings and

---

[1] "On appeal, 'we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department.'" *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 695 (2022) (quoting *C. Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 386 (2012)).  "To the extent that this opinion discusses facts found in sealed documents in the record, we unseal only those facts." *Brown v. Virginia*, 302 Va. 234, 240 n.2 (2023).

[2] Brian Fisher is the biological father to R.J.; Fisher signed an entrustment agreement and the JDR court terminated his parental rights.  Fisher is not a party to this appeal.  Curtis Newnum is H.J.'s biological father; he also was acting in loco parentis to R.J. when the children were removed.  "Father" as used in this opinion refers to Newnum, unless otherwise indicated.  The circuit court terminated father's parental rights to H.J.  Newnum did not separately appeal.

- 2 -

participate in parent mentoring services. The Department provided mother with financial and transportation assistance so she could complete these requirements. In addition, mother had to maintain a safe and stable housing environment, free from violence and substance use. Although mother submitted to the required drug screens, several were positive for fentanyl. Mother was inconsistent with therapy and was discharged from parent mentoring for non-compliance.

The children remained in foster care until July 2022, when they were returned to father's custody because he informed the Department that he and mother were no longer living together. After the children were returned to father, the JDR court entered a protective order prohibiting mother from having unsupervised contact with the children.

In November 2022, the Department received a report that mother moved in with father and the children, and was being left unsupervised with the children. The Department opened another family assessment based on physical neglect and inadequate supervision. Father denied that mother had unsupervised contact with the children and reported that he had no concerns that mother was using drugs. But on October 4, 2022, police encountered mother "inside a vehicle slumped over with the vehicle still running" after she had used narcotics. Mother "was very confused about where she was and seemingly falling asleep as she was talking." She informed police that she had "dope" on her. When they found fentanyl and xylazine in mother's car, the officers arrested her for drug possession.[3]

When the Department received a report of the incident, it worked with father to create an out-of-home safety plan. Neither mother nor father was able to identify any safety resources who could care for the children. The JDR court entered an emergency removal order, and the

---

[3] Mother pleaded guilty to a felony drug possession charge and to an earlier felony bomb threat charge. Mother was sentenced to four years imprisonment, with three years and ten months suspended, and was released in March 2023. Following her release, mother twice attempted suicide by overdosing on illegal narcotics.

Department assumed emergency custody of the children for a second time on December 29, 2022. The Department again offered mother substance abuse treatment, mental health treatment, and substance screenings, but she was unable to participate in the services due to jail restrictions.

The JDR court entered a preliminary removal order and adjudicated the children abused and neglected. The Department petitioned for termination of mother's parental rights. The JDR court terminated mother's parental rights under Code § 16.1-283(B) and approved the goal of adoption. Mother appealed to the circuit court.

The parties convened for a three-day trial in the circuit court. The Department presented evidence that the children were thriving in foster care. They resided together in the same foster home, and both had developed positive relationships with the foster parents. The children received counseling, medical care, and their educational needs were being met. R.J. excelled in school and was involved in a number of extracurricular and community activities. H.J. successfully completed an Infant and Toddler Connection program.

Mother testified that she and father were no longer in a relationship. She alleged she had not used illegal substances since December 2023, and was in methadone treatment and had voluntarily engaged in therapy.

The circuit court adjudicated the children as abused and neglected based upon continued parental drug abuse and inability to protect the children from the effects. The circuit court terminated mother's parental rights under Code § 16.1-283(B) and (C)(2). The circuit court held that mother's habitual use of narcotics impaired her parenting ability. The circuit court also found that mother, without good cause, failed to follow through with treatment that would have improved her parental capacity and mitigate the risk of neglect and abuse of the children. Finding it unlikely that mother would remedy the conditions that led to the children's placement in foster care, the circuit court held that adoption was in their best interest.

- 4 -

On appeal, mother contends that emergency removal was inappropriate because the evidence was insufficient to find that the children were abused and neglected. Mother also alleges that the circuit court erred in terminating her parental rights and approving the goal of adoption.

## ANALYSIS

### I. Abuse and Neglect

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (alteration in original) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011) (quoting *Martin v. Pittsylvania Cnty. Dep't of Soc. Servs.*, 3 Va. App. 15, 20 (1986)).

An abused or neglected child is one: "[w]hose parents . . . create[] or inflict[], threaten[] to create or inflict, or allow[] to be created or inflicted upon such child a physical or mental injury by other than accidental means, or create[] a substantial risk of death, disfigurement or impairment of bodily or mental functions." Code § 16.1-228(1). Courts have the authority to remove a child from a parent's custody when the child is alleged to have been abused or neglected. Code §§ 16.1-251 (emergency removal orders), -252 (preliminary removal orders). The Code contemplates a court's "intervention" when "the child would be subjected to an imminent threat to life or health to the extent that severe or irreversible injury would be likely to result if the child were returned to or left in the custody of his parent." *D. Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 342, 364 (2012) (quoting *Jenkins v. Winchester Dep't of Soc. Servs.*, 12 Va. App. 1178, 1183 (1991)). The

burden is on the Department to establish that it made reasonable efforts to prevent the child's removal. Code §§ 16.1-251(A)(2), -252(E)(2).

Mother contends that there was no evidence of an imminent threat to the children's lives or health to justify the second removal because her "arrest for narcotics occurred outside of the home and not in the presence of the [c]hildren." Mother states that by the time the Department actually removed the children, she had been arrested and taken to jail, and that the children were not exposed to her substance abuse. We disagree with mother's restrictive view of the evidence. "[T]he statutory definitions of an abused or neglected child do not require proof" that the children experienced "actual harm or impairment." *C. Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 416 (2012) (alteration in original) (quoting *Jenkins*, 12 Va. App. at 1183). Rather, the term "substantial risk" as used in Code § 16.1-228(1) "speaks *in futuro*." *Id.* (quoting *Jenkins*, 12 Va. App. at 1183).

In this case, mother exposed the children to her illegal drug use. H.J. was born substance-exposed, and mother later mistakenly gave H.J. methadone. Following the latter incident, police located crushed pills and straws in the home where the children resided. After the Department returned the children to father's care, mother apparently moved in with them, in violation of a protective order, and was later found outside the home intoxicated and in the possession of narcotics. This Court has recognized that a parent's "continued drug use" can create "an unsafe environment" for her child. *D. Farrell*, 59 Va. App. at 364. We have upheld abuse and neglect findings where a mother "allowed an environment to exist 'that presented a substantial risk of impairment to the bodily or mental functions of [a child] if the [d]epartment . . . allowed the child[] to be subjected to those conditions.'" *Id.* at 365 (third alteration in original) (quoting *Jenkins*, 12 Va. App. at 1183). Under the circumstances presented here, we hold that the circuit court was not plainly wrong in finding that the child had been abused or neglected.

Moreover, the Department made reasonable efforts to prevent the children's removal. The record belies mother's claim that the Department "could have safety planned" with father. Despite the Department's efforts to create a safety plan, father was unable to provide a safety resource for the children. Consequently, the circuit court did not err by finding that the Department made appropriate efforts to prevent the removal of the child. We find no error in the circuit court's findings that the children had been abused or neglected and would be subject to an imminent threat to life or health if left in the mother's custody and that the Department tried to prevent the children's removal.

## II. Termination of Parental Rights

"On review of a trial court's decision regarding the termination of parental rights, we presume the trial court 'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 699 (2022) (quoting *Norfolk Div. of Soc. Servs. v. Hardy*, 42 Va. App. 546, 552 (2004)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, 74 Va. App. 447, 470 (2022) (quoting *Ridgeway*, 59 Va. App. at 190).

Code § 16.1-283(C)(2) authorizes a court to terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make

reasonable changes." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 552 (2018) (alteration in original) (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 271 (2005)). The statute "requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which [s]he has been offered rehabilitation services." *Toms*, 46 Va. App. at 271.

Mother contends the Department did not afford her a reasonable period of time to remedy her sobriety. We disagree. Since the children initially entered foster care in 2021, the Department provided mother with numerous services, including referrals for parenting classes, substance abuse therapy, and mental health counseling. But mother continued to test positive for drug use, was inconsistent with therapy, and failed to comply with parent mentoring. After the children returned to father's care, mother violated the protective order by spending unsupervised time with the children; she also continued to use illegal narcotics.

Mother contends that the Department did not offer services following the children's second removal. The record does not support that argument. The Department tried to offer services, but was unable to do so because of the conditions of her incarceration. In any event, the Department was not required to offer her services while she was incarcerated. *See Harrison v. Tazewell Cnty. Dep't of Soc. Servs.*, 42 Va. App. 149, 163-64 (2004). Although mother claims that she had engaged in therapy and counseling after the children's second removal, the record reflects that she already had significantly more than a "reasonable period of time" to remedy the conditions that led to the children's removal.

The record also supports the circuit court's holding that adoption was in the children's best interests. "'[T]here is no simple, mechanical, "cut and dried" way' to apply the best interests of the child standard." *Bristol Dep't of Soc. Servs. v. Welch*, 64 Va. App. 34, 48 (2014) (quoting *Peple v. Peple*, 5 Va. App. 414, 422 (1988)). "Instead, '[t]he question must be resolved . . . in

light of the facts of each case.'" *Eaton v. Washington Cnty. Dep't of Soc. Servs.*, 66 Va. App. 317, 331 (2016) (alterations in original) (quoting *Toombs v. Lynchburg Div. of Soc. Servs.*, 223 Va. 225, 230 (1982)).

Here, the record includes evidence that the children were thriving in foster care. Both children had developed positive relationships with their foster family and benefited from wide therapy and medical care. R.J. engaged in many extracurricular activities and excelled in school; H.J. successfully completed a connections program for children her age.

The children were in foster care for 17 months following the first removal. Since the second removal, the children were in foster care for just over 12 months at the time of the circuit court's hearing. "[I]t is in the best interests of children to receive a permanent placement without languishing in the foster system." *Simms*, 74 Va. App. at 464. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming h[er] responsibilities." *Id.* at 463 (quoting *Harrison*, 42 Va. App. at 162). Based on this record, the circuit court's termination of mother's parental rights is not "plainly wrong or without evidence to support it." *Id.* at 470 (quoting *Ridgeway*, 59 Va. App. at 190).

"When a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment." *Castillo*, 68 Va. App. at 574 n.9; *see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs.*, 46 Va. App. 1, 8 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights under another subsection). Having found that the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(C)(2), we need not address whether mother's parental rights also were subject to termination under Code § 16.1-283(B).

- 9 -

## CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*